Good morning Your Honor, may it please the court, my name is Lawrence S. Lesburg from Gibbons PC on behalf of the appellant Stephen Metro, I would respectfully request two minutes for rebuttal. Done. Thanks. Thank you. Your Honor, this case requires the court to determine how gain is to be calculated for the purpose of insider trading prosecutions. In doing so, the court has to both interpret the pertinent guidelines provisions, which are section 2B 1.4 of the sentencing guidelines, and B, square its decision with this court's decision in United States v. Kruger, which I know Judge Jordan, you were on the panel of. Can I ask you right from the jump, how is it that you can argue that there's no evidence that your client knew anything about this person when your client pled guilty to conspiring with Heidelberg? When I say this person, I'm talking about the broker of course. No, he didn't plead guilty to conspiring with Heidelberg. He pleaded guilty to conspiring with Tamayo. I thought that he pled guilty to count one. He pled guilty to count one, but the fact of the basis... Yeah, but what does count one charge? So count one charges a broad conspiracy. With who? Among who? Among the three of them, for sure. So if he pleads guilty to that, Mr. Rusberg, how can he say, I never pled guilty to it, which is what I hear you saying in your briefing and at the podium. Doesn't there have to be a factual basis laid on the record for a person to plead guilty? Absolutely. Right, and you're saying that didn't happen? Absolutely. There's a factual basis for him to plead guilty to a conspiracy to commit insider trading. But you need a broker. You need someone to trade, right? Your client worked in a law firm. My client... So these are two different questions, so let me try to take them one at a time. First the question of what he pled guilty to. You're on a factual basis. There was absolutely, without question, a factual basis for him to plead guilty to conspire to commit insider trading with Tamayo, the friend whom he tipped off. But he does not provide at any point, Your Honor, a factual basis that he conspired with Edelman. So you're saying that he pled guilty to a count he shouldn't have pled guilty to? No, he pled guilty to the violation, but not to the particular facts that were set forth in the charging instrument. Was there anything at the guilty plea colloquy where your client denied the indictment's factual allegations vis-a-vis Edelman? No, Your Honor. And so then why don't we just accept the indictment at face value that you're not a very successful insider trader if nobody trades, right? So when you're taking that privileged information from your employer and passing it on to your buddy so that we can all go make a lot of money in the market, you know somebody's trading, right? So we don't really have a sort of fair notice or equity problem. Sure we do, and here's why. Because of two reasons. It's an excellent question, but there's two reasons why he would not know that somebody like Edelman even existed. Number one, and the record is clear in this case, that Mr. Tamayo traded on his own account. That is, he did online trading himself, and people do that. And so there's no question, and it's absolutely undisputed, that when Mr. Metro tipped off Mr. Tamayo, he absolutely knew that Mr. Tamayo was trading. But there was no reason to believe that he was trading through a broker. Even beyond that, a more critical fact is that even assumed for the moment that it was reasonable for him to believe that there was a broker through whom Tamayo was trading, he wouldn't necessarily know, and there's no evidence that he did know, that Tamayo was telling his broker about the inside information. It could just very well have been, and of course there's nothing in the record about this, so we're talking about what one could reasonably believe, he could believe that Tamayo said to his broker, trade, trade these issues as to which, but didn't say because I have inside information. So even if all that is as you say, when the indictment's handed down, it comes as some shock and surprise to Metro that there's this third guy involved, right? His natural reaction is, wait a minute, who's this Adam guy? I don't know him, I'm insider trading with my buddy Tamayo, and that's it. I'm not pleading guilty to anything that involves this other guy I never heard of, right? But that never happened, right? Right, so first of all, again, if you read the colloquy at the plea. We touched on that, we understand that, but I thought he pleaded guilty to a conspiracy that named three co-conspirators, one of whom was Idam. He pleaded guilty to a conspiracy to commit insider trading. It is not necessary to plead guilty, and in fact he always contested, from day one, he had any information about Adamant. That was an issue that he raised that followed in the plea. Then why didn't he say, and say on the record to the district court, I can't plead guilty to conspiring with Mr. Adelman as count one charges, because they didn't conspire with Mr. Adelman. Because he didn't say that, he said, I'm guilty of that, of that thing that's in charge in count one. He did much more than that. He did much more than that. The way guilty pleas work in the District of New Jersey, and I suspect throughout this circuit, is that the questions that constitute the factual basis are negotiated and discussed between counsel beforehand. In this case, there's a list of those questions, they're all laid out, and you can read them for yourself. And none of them require him to say yes or no with regard to that. Now what can- Wait just a second, Mr. Westberg. Are you saying that the district court, there could be two things you're saying, and I want to make sure I understand it. The one thing you could be saying is, and I don't think you're saying this, but the one thing you could be saying is, the district court blew it. Because here was count one, it charged a three person conspiracy, and when it came time for the colloquy, my client got up and all he agreed to was conspiring with Mr. Tamayo. That's it. So there really wasn't a factual basis for a plea to count one, a plea of guilty to count one, because he didn't admit it. He didn't admit a key fact, and therefore he should never have been found guilty of count one because the record wasn't properly laid. If that's your argument, then it's a whole different problem, right? But if your argument is, wait a second, as a legal matter, even though a count can charge a specific conspiracy amongst specific named individuals, it's still awful and valid for a person to come into court and say, I admit to conspiring with one of those people, but not really joining that whole conspiracy. If that's your argument, I'm puzzled because I've heard from a lot of counsel at this podium, maybe even you at some point, that the conspiracy you're supposed to be a part of is something you've got to knowingly join. You've got to join a conspiracy and you know who you're joining up with. And if you join a different conspiracy, that's something else, and you've got a variance from the indictment, you've got a problem, you've got to dismiss the count, etc. Where are you coming at us with this? Is it he never really should have been accepted as having pled guilty to count one, or there was a different conspiracy, just the two of them, and that's a problem with count one? Or something else? You have not ever heard me stand up here and say that the guilty plea to a particular offense has to track all of the facts of the conspiracy as alleged in the indictment. So for example, as you well know, an indictment will allege all kinds of overt acts and particular facts. In order to plead guilty, you do not have to admit to every single one of those. That's true, that's true, but we're not talking about whether he admits to, I was involved in this wing of the conspiracy that's mentioned in this, or I was involved in that. This is a conspiracy alleged of three people, and you're saying he just wasn't part of that. He committed the crime of conspiring to commit insider trading. It was very clear from the time of the guilty plea what precisely he was admitting to, which was he was admitting to conspiring with Mr. Tamayo. That's what he admitted to, the government agreed that that was a sufficient factual basis, and respectfully judge, look at the end of the guilty plea where the court says, does anybody have any, is that sufficient, and everybody says it is? I've read the colloquy, I'm with you on that. I'm sorry, I don't understand. Here's a third way, and I wonder if this is a possible thing that you would concede. Your briefing can be read to acknowledge that he became aware of Mr. Eidelman, and that the conspiracy was still going on until the time he was arrested. So he joined that three person conspiracy, but he didn't know about Eidelman before that, and therefore, the monies accrued pre his knowledge of Eidelman, that can't be taken into account. Is that a way to look at the record? Certainly. That's a perfectly appropriate way to look at the record, and then the question becomes, is it appropriate to charge him with the losses that predated his joining the conspiracy at that time? Is January 28th, 2014 the time, or did it occur before then? The record is not particularly clear on that, one could, the government submits a conversation from January 13th, 2014, that I don't believe shows that he had any knowledge of Mr. Eidelman, but certainly by January 28th, there's specific, and by the way, that conversation does not involve him, but as of the conversation, Judge Sirica, on January 28th, 2014, there was discussion of a broker, and his reaction to the discussion of the broker would, respectfully I submit, indicate that he had no knowledge up until then that there was a broker. So that is a perfectly appropriate way of construing the record, Judge George, and I would be happy to, but I also just wanted to be clear that the way guilty pleas work, and if this court wants to say something very different, it can, it is not required, even in a conspiracy, no matter how many participants there are, whether it's three or six or ten or, you know, to, to, to, to, for that. You have to plead guilty to the conspiracy charge. You can't just say, I'm guilty of insider trading with somebody. You, you plead guilty to the conspiracy that's charged. Well, if that's true, then somebody, whether defense or the government or the court, should have caught it, because that is not what he pleaded guilty to.  And, and, and, and I don't think he did not plead guilty to the conspiracy charge in count one. He did not plead guilty to this, he pleaded guilty to the crime alleged in count one. He did not plead guilty to that conspiracy as you're, you're postulating it here. That is not, and, and it couldn't be clearer from the record, and it couldn't be clear as well in terms of understanding what he pled guilty to until when, when you look at what happened after that, which is there's all this litigation, post plea, in which he objects to the pre-sentence report on the grounds that it doesn't, that he didn't know who Adelman was and, and, and he didn't know that there was a broker until January 28th. And, and, and, and, and everybody sort of concedes, I mean the government concedes. You might, you might, in fact, you might be on your best ground by just saying what you said a minute ago, which is, yeah, you could look at it as he joined the conspiracy late, and then you've got a ground to fight on without, that the money didn't count before that January phone call, right? If, if we looked at it that way, then this argument and discussion we're having right now becomes irrelevant because you still get what you're after. Is that not so? I, I, absolutely, and that's why I said I'm happy with that, I'm happy with it. All right. Well, all right. So that means you're saying that your client didn't join the conspiracy with Adelman until the lunch conversation that Tamayo and Metro had on the 20th of January. What I'm, what I'm saying is that he didn't even know until January 28th, 2014, that Adelman existed, but for purposes of the discussion that one could argue that he joined the conspiracy on that day. And if you do that, then your argument is in essence that 1B1.3 has applicability and the gains need to be viewed, you need to, you need to look at the relevant, no? No, no, no, I'm sorry, I'm out of time. I do, I contend that 1B1.3 applies. Oh, okay. No, I mean, our argument here is that this is strict, a straight 2B1.4 analysis. That's no reasonable foreseeability. The one thing I would say is that reasonable foreseeability plays a role in substantive conspiracy law in determining what actions a conspirator is liable for pre-withdrawal. The law is pretty clear on that and we cite it. But with regard to whether he can be charged with the trades that Adelman did, the trades that Adelman's family and friends did, the trades that Adelman's several steps removed, it turns on a construction of 2B1.4 and for the reasons that we set forth in our brief, we say that those elements are not satisfied. 1B1.3 says in its commentary, a defendant's relevant conduct does not include the conduct of members of a conspiracy prior to the defendant joining the conspiracy, even if the defendant knows of that conduct, which sounds pretty helpful to you. But you're saying we don't have to look to that at all. We don't have to think about that. I'm concerned that, I think that's absolutely consistent with the conspiracy law that I've cited to the court, but under 2B, but 2B1, this court held in Kluger that 2B1.4 does not allow for the applicability of 1B1.3 in terms of reasonable foreseeability. And I stand to policy reasons for that. We want to hold insider tippers liable for certain types of trade downstream. But the specific trade that we want to hold them accountable for downstream are of these three kinds that are mentioned in 2B1.4, trades by himself. Okay, that's fair enough. Trades by persons acting in concert with him and trades by persons to whom the persons who received inside information, which is what Edelman is, but the persons to whom it was provided. And we understand from Kluger- So all of the two issues acting in concert in this case. In a way, I mean, I think this. I think that's right. Fundamentally, I do think that the third prong, persons to whom the defendant provided inside information, is an important one. And it's an important one when one looks at this together with Kluger. In Kluger, Mr. Kluger- But that's Tamayo, and there's no dispute that your client's responsible for what Tamayo- A hundred percent, absolutely. He's focused on whether he can be held accountable for AEDM. Right, but in Kluger, and then I'll sit down, in Kluger, the defendant Kluger understood that when he was providing information to the millman that it was going to go- Was undisputed, right? Pardon me? Was undisputed in that case. It was undisputed. It was agreed upon. And here, that was not the case. And in fact, if you read the government's brief, the government says very clearly that the question of whether Mr. Mitchell knew about Mr. Edelman was a disputed one. And so I would just want to conclude by saying this. To the extent that was disputed, and to the extent that these, that the in concert requirement and the person to whom the defendant provided inside information requirement have to be met, the district court should have made findings, with regard to that, particularly given how vigorously it was disputed prior to sentencing, you can read the sentencing transcript and see that no such findings were made. Assuming we think that the district court did not make proper findings, what do you want the remand to say? Just that? Or are you looking for something more? No, Your Honor, we're looking for a fair resentencing hearing at which the court would make findings as to whether, in fact, Mr. Mitchell was acting in concert with Mr. Edelman. We'd be confident that we'll prevail on that on this record, but the court would have to examine those facts and make a decision under the applicable guideline. All the court held here was that that was the applicable guideline, conclusively determining that, therefore, Mr. Mitchell was liable for Mr. Edelman's trades, and that the language of the guideline applied. And the court seemed to think that clearly determined the case, but it made no factual findings, period, even though the pre-sentence report specifically says the court will have to make findings on this, nor are there findings in the statement of reasons. So we're just looking for a fair hearing. And he didn't say that he didn't need to make findings? He did not say he did not need to make findings. The government relies on the docs that he checked on the statement of reasons saying he adopted the pre-sentence report. It's very clear he adopted the pre-sentence report, since he essentially read those paragraphs in making his findings, but in adopting the pre-sentence report, there are no findings with regard to any of those elements, certainly not with respect to in concert. Okay. Thank you very much, Mr. Westberg, Mr. Morimako. Good morning, Your Honors. Ben Morimako on behalf of the United States. I think the court is right to focus on what Mr. Metro, in fact, pled guilty to. It was charged as a three-person conspiracy. Okay, but does that answer the in concert question? And it would be most helpful if you went right to that point. Sure. If we look at Kluger, to the extent it discussed in concert, it was using the word conspiracy throughout. It was talking about he is responsible for the trades that his co-conspirators. That case was a circumstance in which the broker's involvement was undisputed, and we went out of our way in two footnotes and above the line to say it's clear that Kluger meant for the insider tips to get to the broker. That was agreed by everybody. So how does that answer the question posed in this case where the defendant is saying vociferously, I never meant for those tips to get to the broker? Well, Your Honor, we can certainly rely on the fact that when the defendant learned about Mr. Edelman's involvement, he did not withdraw from the conspiracy and, in fact, agreed to Why does that mean he acted in concert with him before the time he knew? Well, under general principles of conspiracy law, Your Honor, you are responsible for the acts in furtherance of a conspiracy even from the time before you joined. So you're saying that the words in concert is used in 2B1.4 are indistinguishable from the idea of conspiracy and that somebody who enters a conspiracy at no matter what point is responsible for everything that happened before in the insider trading world under 2B1.4? Your Honor, that's the position. Why didn't you really make that argument? I mean, I think if we were to affirm this decision based upon what Judge Jordan just said, we would be in the arena of affirming for any reason supported by the record, not based on the argument you made because my review of the record, not you personally, but the government, my review of the record indicates that there was a lot of discussion about Kluger, a case that, for the reasons Judge Jordan just articulated, I agree, didn't have a lot of bearing on the sentencing. Isn't that a fair appraisal of what happened in the district court? There was an extreme focus on Kluger, and I think that was the basis for the district court's decision, but I would respectfully disagree that Kluger doesn't control the outcome here. But here we have a factual dispute. The dispute in this case centers around what Metro knew and when did he know it vis-à-vis Adelman, right? And all of those issues were already baked in in Kluger. They weren't an issue. How could Kluger be helpful? My question, I guess, is how could Kluger be helpful in guiding the district court in fashioning a loss amount for Mr. Metro in a case where Mr. Metro is arguing in the district court, look, you can't hold me liable for the whole loss here, I'm just responsible for a portion of it, and I'd like you to allocate the portion that my buddy Tamayo and I were responsible for. How does Kluger help the district court answer that question? Because I think we have to distinguish between the whole being Kluger and the fact in Kluger, and I think it's the whole being Kluger that we're relying on. The facts in Kluger were certainly better for the government in terms of showing the direct knowledge. The direct knowledge was easy to show and the acting in concert was easy to show, but the whole being Kluger is if you satisfy those, then, in fact, you're responsible for all the trade. You don't use reasonable foreseeability. You don't use the limits of the agreement. And what I'm arguing- What's the language you're relying on in Kluger? In Kluger, we said at page 561, quote, Bauer, he's the broker, is explicitly an individual, quote, to whom the defendant provided inside information, unquote, citing 2B1.4 comment. That was the basis of the holding. Okay. I would say, Your Honor, page 558 of Kluger, where the court said, the plain language of 2B1.4 unequivocally attributes all of Bauer's gains to Kluger because Bauer was a person acting in concert with the defendant as well as one to whom the defendant provided inside information. Wait. That begs the question. We're trying to determine whether acting in concert for purposes of 2B1.4 is coextensive with anyone who pleads guilty to conspiracy. Sure. And what, Kluger doesn't speak to that, does it? Well, like- I'm not sure anybody does. Do we have a case anywhere that says, you know, government wins in a case like this because the defendant who pleads guilty to conspiracy will not later be heard to argue that he did not act in concert with one of his named co-conspirators. That argument is not explicitly made, but I took it to be implicit in Kluger where it argues in sort of its strongest paragraph or sentence on page 561. It keeps talking about by punishing the conspirator for all the gains made by his co-conspirators. They can't limit their agreements with their co-conspirators. That's the inherent risk of leaking. So you're reading 561, but you're ignoring the immediately preceding paragraph, which has the language I just quoted to you, where Bauer is, quote, explicitly an individual to whom the- Right. Okay. So what you're really arguing is that Kluger establishes a strict liability regime, that no matter when you enter a conspiracy, if it's an insider trading conspiracy, you're guilty for all gains in that conspiracy, and that's what Kluger says. That's the government's position. That is our position. I mean- And if we disagreed with you, you've acknowledged in your answering brief, haven't you, that this case has to go back. Yes, Your Honor. I mean, look, there were not factual findings laid below, and there were factual disputes there. So our position really is that you can take the undisputed facts in this case and get to the result that the district court- But the only way you can get there is to accept what you've read Kluger is saying. Yes. If we have to accept the premise that acting in concert with, at least if you are a member of a conspiracy, and he certainly pled guilty to a three-person conspiracy, then you are responsible for all of the gains that result from that conspiracy. Yes. That's the position. What about unnamed co-conspirators? Would that rule still obtain? Yes, Your Honor. It really should. Because of the conspiracy law in for penny and for pound? Yeah. Look, I think Kluger was sending a clear signal. I mean, Kluger in some ways was a harsh decision for defendants. I mean, Kluger clearly said that we want to send a deterrent message, and so that if you are the tipper, you're going to be responsible for what happens down the line, certainly things that are within the scope of your conspiracy. Well, posit with me, if you would, a circumstance where Mr. Metro had never heard of Mr. Eidelman, never even heard the name. All he knew was he was given his buddy Tamayo tips, and Tamayo was trading, and he didn't even know that there was a broker involved, because as far as he knew, Tamayo was, he believed all the E-Trade ads and was doing it all himself. Your Honor, I mean, our position is unchanged, and it sounds harsh, but I do believe that that was. Does it sound harsh enough that it's not connected to 2B1.4 anymore? How can you say somebody is acting in concert with somebody they don't know exists? Yeah, I thought you were going to say that's not a conspiracy involving more than Metro and Tamayo, right? If Metro thinks that he's tipping Tamayo, Tamayo is trading on his own account and kicking back proceeds to Metro. That's a different thing than Tamayo on his own initiative deciding to share the privileged information with 10 of his favorite brokers, right? Sure, it's different. Then this Metro would not be, if Tamayo chose to do that on his own initiative without any knowledge on Metro's part, then Metro's not guilty of a conspiracy with those other 10 brokers that Tamayo chose to involve, is he? It's an interesting question. Or is it your position that when a tipper gives information to somebody, that you're automatically in the suit for any future conspiracies that 2B may create? That can't be the law. Well, certainly it's reasonably foreseeable that when you put this information out, that the people you give it to will act on it, and in precisely the manner that Mr. Tamayo did, which was to share it with brokers and family members and friends. How are you going to satisfy the acting in concert requirement with the 10 downstream brokers that Metro has no knowledge of? I don't know. It sounds important. And it wipes it out, doesn't it? The guidelines? Well, I think as long as it falls within general conspiracy law, I think that you have enough there to hold him liable. I mean, let's make it even starker, okay? That was my point. I thought that that would not be a conspiracy case on the hypothetical I gave you, because Metro doesn't know anything. He thinks he's a deal with Tamayo to trade on his own account and give him kickbacks. He doesn't expect Tamayo to go out and find other people. Judge Hardiman, I will certainly agree with you that the extent of liability that we're arguing in this case is not beyond what conspiracy law would permit. So if that falls outside the conspiracy, conspiracy law tends to be very broad, though. I mean, if I look this morning at the third circuit model charges on conspiracy, you can be held responsible for things that predate your joining. You can also be held responsible for things that you don't know the identity of other people who are involved in it. So to the extent the other people are working towards the same common objective, you can be held responsible for that. The government's argument, though, is that the words acting in concert with are meant to be and must be read to be coextensive with conspiracy. That is our position. And that is how Kluger seemed to interchangeably use the words co-conspirators quite frequently in its discussion. I didn't see much reference in concert. But I do want to sort of stick on this point just a little bit because it occurs to me that, again, read Kluger in its strongest sense, what I see the court as having said in Kluger is, even if Mr. Metro had gotten signed agreement from Tamayo that said, I'm only going to trade $10,000 per trade and I'm not going to share this information with anyone else, this court would have held him responsible for the entire series of trades because he's conspiring with Tamayo. I thought that Kluger said and said repeatedly, we have a circumstance where the involvement of the broker is undisputed. And, indeed, as we said in both footnote 13 and footnote 19 in that case, 13, it's undisputed Kluger passed inside information to Robinson with the intent that the information would reach Bauer. In footnote 19, Kluger intended Bauer to be the ultimate to be. Those were as... The facts are better. It's not just that the facts are better. The very issue we're addressing was a non-issue in Kluger. As Judge Hardiman said, it was baked in. So it does feel like the government is begging the question. It's saying Kluger controls and then when we say, but Kluger didn't have these facts, what we're hearing back is, yeah, those were better facts. They're not just better facts. They're the only facts on which Kluger is based. But the legal holding in Kluger is once you show that someone is acting in concert, then you're responsible for everything that follows. Yeah, but here the question is, did Metro act in concert? And your answer is you can't be part of a three-member conspiracy without acting in concert with the members of the conspiracy. Sure, and also I... But we have no case law. We'd be the first court to say that. And I guess your position is, yeah, we'd be the first because it's a fairly self-evident proposition. Yes, Your Honor. To ask whether somebody acts in concert is to also ask whether someone conspires with another. Put another way, if someone concedes that they conspired with two others, it necessarily follows that they acted in concert with two others. Yeah, and I just want to... I think you've got a question. Oh, I'm sorry. Oh, no. Go ahead. Why don't you finish? Okay. I just wanted to clarify the issue of when Mr. Metro joined the conspiracy because I think late with the Janbury conversation, it shows his knowledge. But the conspiracy he joined at the get-go, I mean, he joined the conspiracy... Well, that's the fact question, right? That's the very... That question is not in dispute, though. What do you mean it's not in dispute? I just heard Mr. Lassiter here saying it's clear that he didn't know anything about it until Janbury, and you're saying it's not even in dispute that he knew what was going on. We're arguing different points then. It's clear that at the get-go, he had an agreement with Tamayo, and at the get-go, Tamayo immediately... I'm sorry, he had an agreement with Tamayo, and Tamayo immediately brought Edelman into the conspiracy. Yeah, but his assertion is he didn't know Edelman brought him in. Right. So that's the fact question. The knowledge issue. Yeah, the knowledge issue, but you don't need knowledge under conspiracy law. You don't need to know the identity. You don't need to know when you're talking now. Let's go to 2B1.4. You don't need to know that you're acting in concert with an individual to be acting in concert with an individual. His assertion isn't... His assertion isn't, I knew there was somebody, I just didn't know who. His assertion is, I didn't know that there was anybody else. Right. That feels like a distinction with a difference. You're saying it's not? Well, as I understand Mr. Luthsberg's position, he's saying that Mr. Tamayo was acting in concert with Edelman and Mr. Metro. Mr. Edelman was acting in concert with Mr. Tamayo and Mr. Metro. Only Mr. Metro wasn't acting in concert. Right. And you're saying that's a factual impossibility? I'm saying you should interpret 2B1.4 to say as long as conspiracy law is satisfied, you were acting in concert. So that would be an impossibility as a matter of fact, yes. Mr. Tamayo was a cooperating witness at the time of the January meeting. He could have made this easier for everybody if he had asked a few more questions. There are a lot of ways this could have been easier for everyone, Your Honor. If there had been more factual findings below, some of these questions might have gotten away as well. As I say, our position, and I think the court understands it, is either Kluger controls under a broad definition or it should be sent back for factual findings. As a legal matter, would you address the assertion made by Mr. Lesper that it's possible to plead guilty to a conspiracy? It is legally possible to plead guilty to a count which charges insider trading amongst a conspiracy of three without agreeing that you conspired with the other two people in that three-person conspiracy. I take that to be his position that you don't have to agree to everything of factual detail. My question to you is, is he right or is he wrong about his assertion? I think he's wrong about that because I think that would open up the possibility that he in fact pled guilty to a different conspiracy than the one that was charged. We see those cases quite frequently, mostly after a verdict, not usually in a guilty plea situation. So why didn't anybody in that courtroom say, hey, wait a second, this is a three-person conspiracy. You can't take that plea because he hasn't said anything about Edelman. All he's said is I conspired with Tamayo and that's not count one. Our position is that under conspiracy law, he doesn't have to know about the existence of Edelman, so his factual basis was deficient. But the PSR talked about Edelman. Sure. He's on notice both in terms of the indictment and the PSR before he walks in to plead guilty that Edelman is a named co-conspirator. Certainly in much larger conspiracies with 10, 20 people, you'll often get people who can't provide a factual basis. The assistant U.S. attorney, I mean, look, I did that job in the long ago, and when the judge would stand up and say, Mr. Jordan, why don't you provide us a factual basis for the plea to which defendant X wishes to say guilty, to enter, and then you would give the factual recitation which was supposed to touch on every element of the offense. So you're saying that as a matter of conspiracy law, a conspiracy charging, account charging, a three-person conspiracy doesn't have to have a plea colloquy that establishes that the person joined the conspiracy of three or knew who else was in the conspiracy. That's the government's. Sure. Let's say we'll have a 12-person drug conspiracy and we're not going to do a factual basis and say, did you know person one, two, three, four, through 12. The question is, did you join that common group? Okay. I got you. Thank you, Your Honors. Let me just very quickly address the last point that you made, Judge Hardiman, about that Mr. Mitchell is on notice. You understand, of course, that he didn't have the pre-sentence report at the time of the guilty plea. That comes much later. I spent all the time during this argument reading through the indictment and the case. The indictment is a three-person conspiracy that is described there, but if you read the particular factual allegations, those particular factual allegations at least give rise to the notion that, from beginning to end, that Mr. Mitchell was not acting in concert with Mr. Adelman, and that's the point. Your position has to be that conspiracy and in concert with are not coextensive concepts, right? Absolutely. It seems like a hard row to hoe. There's no case law either way, I guess, right? That's right. Help us out grammatically. How can one conspire with Party A and Party B while not acting in concert with Party A and Party B? Or is the answer, no, no, no, my client did not act, did not conspire with B. He only conspired with A. Respectfully, I think you just asked the exact wrong question. You asked, how could somebody conspire without acting in concert? The real question is, could somebody act in – could somebody – actually, you asked it the other way. But here's the point. One can act in – one can conspire with somebody under the law that Mr. Marmarpa has been discussing. You could be guilty of a large conspiracy and not have acted in concert with that person for purposes of assessing gain for sentencing purposes. I think one thing we're getting away from – Okay, so that's an interesting argument. You're saying there's a distinction here between liability and damages. It's almost like a civil analog. You're saying my client, for purposes of liability, yes, he acted in concert. Because by definition – He conspired. Well, what's a conspiracy is to agree to do something together in concert, right? But not with everybody. And that's the point that he's been laboring to make to you with regard to the nine-person drug conspiracy. Somebody can conspire, can be part of a large conspiracy, and you admit to an agreement that encompasses all the people in that large conspiracy, but you haven't acted in concert with them the way the words are used by the sentencing commission here for purposes of assessing loss. That's just because it's a damages thing. That's because – That's right. I thought you were going to say or concede that – you won't concede if you don't want to. I thought you were going to concede that one could say Metro acted in concert with Tamayo and Adelman for purposes of liability. But that doesn't shed any light on whether he acted in concert or conspired for purposes of the damages, the loss amount. That is absolutely what we say in our papers. Okay, then maybe Kluger does have a little more saliency here than I gave it credit for, because as I recall in Kluger, the defendant was making an interesting argument that, you know, yeah, I conspired, I agreed, but, jeez, he took it way beyond. I didn't authorize that kind of loss, and our answer was sorry. Once you're in the conspiracy, you can't limit your downside risk on damages by arguing that you didn't authorize the excess. Your Honor, what the court did very clearly in footnote 13 couldn't make – it couldn't be clearer. When you look at footnote 13 and actually 19, especially footnote 13, the argument that Mr. Kluger was making was that he couldn't – he shouldn't be held accountable for all kinds of unforeseen trade that had occurred. And what the court does instead is it says, no, look at 2B1.4. That's how you decide what losses, gains in this case, can be used for purposes of deciding on calculating the sentencing guidelines. But Kluger's response is just like Metro's insofar as Kluger says, I acted in concert with respect to the $10,000 or whatever the number was, I forget. But I didn't act in concert with the other amount. In fact, that was ultra-furious. That wasn't part of our agreement. They went way beyond what I agreed to. But that wouldn't be faithful to the language of the guideline, which doesn't talk about in concert with certain activities. It talks about in concert with a person. Well, then we're right back to whether this is a three-person conspiracy or a two-person. No, respectfully, we're not. Because what one can do – there's no question that if you act in concert with someone that you are conspiring with them. But there is the question of whether if you are part of a conspiracy with someone, which occurs as a matter of law in many circumstances, you are also acting in concert with them within the meaning of 2B1.4. Or purposes of attributing loss or gain in the context of sentencing, not for the purpose of establishing liability. Absolutely correct. And the best way you know that is because in deciding on liability, the law is very clear that what you look at, in terms of whether you are responsible for the act of co-conspirators, is whether their actions were foreseeable. But this court has made clear that foreseeability is not the criterion for purposes of gauging gain under the sentencing guidelines. It is completely appropriate and is what the commission has done to say these are complicated cases. They say that right in the guide. It's hard to decide on what the gain is. We're not going to say, and they don't say, you're responsible for all gains that occurred in the course of the conspiracy. Because remember, insider trading cases are almost all conspiracies. By their nature, there's a tipper and a tippee. They don't say you're responsible for all gains that fall within the conspiracy. What they say instead is you're responsible for three types of gains. One of which, the one we're talking about here, is ones where you acted in concert with. The commission itself would not have had to say that if it was assumed from the get-go that every, as a matter of strict liability, which is the government's position, also completely unprecedented, that you're responsible for everything that happens in the course of the insider trading. And remember here, as you think about it, this is not so remote from the hypothetical that you were giving where there are numerous brokers. Here, what Mr. Adelman does is not simply acting as a broker. He tips off his family, his friends, way down the road from anybody that anyone could argue Mr. Metro was acting in concert with. Understood. Thank you, Mr. Luxberg. Thank you. Thank you for the argument, both from you and for the government. Mr. Mormark, I will take the case under advisement.